UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-2908-GW-MAAx | Date | August 23, 2021 |
|---|---|---|---|
| Title | *Nicole Tucker, et al. v. FCA US LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Tionna Dolin | Hailey M. Rogerson | |

**PROCEEDINGS:** **TELEPHONIC HEARING ON PLAINTIFFS' MOTION TO REMAND CASE TO LOS ANGELES SUPERIOR COURT [22]**

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court DENIES Plaintiffs' Motion.

: 07

Initials of Preparer   JG

*<u>Tucker, et al. v. FCA US, LLC, et al.</u>*, Case No. 2:21-cv-02908-GW-(MAAx)
Tentative Ruling on Motion to Remand

**I. Background**

FCA US LLC ("FCA") removed this action to this Court on April 5, 2021, following the dismissal of the only non-diverse defendant in the case, asserting this Court's subject matter jurisdiction based upon complete diversity pursuant to 28 U.S.C. § 1332(a)(1). The Complaint contains claims for: 1) violation of California Civil Code § 1793.2(d), 2) violation of California Civil Code § 1793.2(b), 3) violation of California Civil Code § 1793.2(a)(3), 4) breach of express written warranty pursuant to California Civil Code §§ 1791.2(a), 1794, 5) breach of the implied warranty of merchantability pursuant to California Civil Code §§ 1791.1, 1794, 1795.5, and 6) fraud by omission. Plaintiffs Nicole Tucker and Marques Tucker (collectively, "Plaintiffs") now move to remand, arguing that FCA has not satisfied the applicable preponderance-of-the-evidence standard for demonstrating the minimum amount in controversy over $75,000 for diversity jurisdiction under 28 U.S.C. § 1332(a). *See Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121-22 (9th Cir. 2013) ("Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."); *see also* 28 U.S.C. § 1446(c)(2)(B).

Plaintiffs' Complaint includes the following allegations:

Plaintiffs leased a 2019 Chrysler Pacifica – a vehicle FCA manufactured and/or distributed – from the now-dismissed defendant, Cerritos Dodge Chrysler Jeep, on or about March 30, 2019, for a complete-lease-term price of approximately $31,721.76. *See* Complaint, Docket No. 1-3, ¶ 8. Plaintiffs received an express written warranty, including a 3 year/36,000 mile bumper-to-bumper warranty and a 5 year/100,000 mile powertrain warranty, covering the engine and transmission. *See id.* ¶ 9.

The vehicle contained or developed defects during the warranty period, including: a malfunctioning radio, defects requiring the updating and/or reprogramming of the radio, defects causing the illumination of the forward collision warning light, defects causing the right front passenger seat USB port to be inoperable, defects causing the vehicle to

fail to charge when connected to the charging port, defects causing the entertainment screen to malfunction, defects requiring the performance of Recall VE2, defects causing the vehicle to be unable to reverse, defects causing the illumination of the shifter lights, defects causing the liftgate to be inoperable, defects causing the storage of Diagnostic Trouble Code; defects causing the failure and/or replacement of the DVD player and/or entertainment system; and defects causing a failure to charge.  *See id.* ¶ 10.  Plaintiffs also purchased the vehicle as manufactured with FCA's defective 9HP transmission and Powertrain Control Module, which FCA knew about prior to the transaction, but did not disclose.  *See id.* ¶¶ 12-14, 16-17, 20, 22-23, 51.  FCA also knew that the transmission installed in the vehicle was defective, but failed to disclose this fact to Plaintiffs.  *See id.* ¶¶ 15, 23, 51-52.

FCA and its representatives failed to service or repair the vehicle to conform to the express warranties after a reasonable number of opportunities.  *See id.* ¶¶ 27, 34, 42.  FCA also failed to make available sufficient service literature and replacement parts to its authorized service and repair facilities in order to effect repairs to comply with its obligations.  *See id.* ¶ 39.

As relief for the actions and inactions alleged in the Complaint, Plaintiffs seek actual damages, restitution, a civil penalty, consequential and incidental damages, costs of suit, reasonable attorneys' fees, punitive damages, rescission of the purchase contract, prejudgment interest, and other proper relief.  *See id.* at 11:8-23.  Plaintiffs also specifically indicate that they "seek the remedies provided in California Civil Code section 1794(b)(1), *including the entire contract price*."  *Id.* ¶ 36 (emphasis added).  Plaintiffs further specify that they seek a civil penalty of two times their actual damages pursuant to Cal. Civ. Code § 1794(c).  *See* Complaint ¶ 30.  That statute provides, in pertinent part, that:

> [i]f the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a) [providing for recovery of damages and other legal and equitable relief], a civil penalty which shall not exceed two times the amount of actual damages.

Cal. Civ. Code § 1794(c).

## II. Analysis

As noted above, because the face of the Complaint is unclear/ambiguous with

respect to the amount-in-controversy, FCA bears a preponderance-of-the-evidence burden in demonstrating that a sufficient amount is in question for purposes of establishing the existence of diversity jurisdiction.  *See Urbino*, 726 F.3d at 1121-22.  The amount-in-controversy calculation does not ask a party to prove a plaintiff's case.  Instead, it simply encompasses "all relief a court may grant on [the operative] complaint if the plaintiff is victorious."  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) ("[T]he amount in controversy is the 'amount at stake in the underlying litigation,' and therefore 'the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.'") (quoting *Chavez*, 888 F.3d at 417-18).  A court only considers what a plaintiff's complaint puts in-controversy, not what a plaintiff is ultimately likely to recover or whether a defendant likely has a defense that will preclude some or all of that recovery.  *See Schunk v. Moline, Milburn & Stoddard Co.*, 147 U.S. 500, 505 (1893) ("In short, the fact of a valid defense to a cause of action, although apparent on the face of the petition, does not diminish the amount that is claimed, nor determine what is the matter in dispute; for who can say in advance that that defense will be presented by the defendant, or, if presented, sustained by the court?"); *Fritsch*, 899 F.3d at 793; *Riggins v. Riggins*, 415 F.2d 1259, 1261-62 (9th Cir. 1969); *Cain v. Hartford Life & Accident Ins. Co.*, 890 F.Supp.2d 1246, 1249 (C.D. Cal. 2012) ("'The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will *actually owe*.'") (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008)) (omitting internal quotation marks).

As noted, Plaintiffs here seek, among other things, the "entire contract price" for the vehicle in question and a civil penalty of two times their actual damages.  *See* Complaint ¶¶ 30, 36.  In its Notice of Removal, FCA calculates the total amount-in-controversy here – even before adding in amounts meant to reflect Plaintiffs' requests for attorney's fees and punitive damages – as either $95,165.28 or $103,217.67.  *See* Notice of Removal ¶¶ 27, 29.  FCA reached these alternative figures by taking a) the "complete lease price" of the vehicle and b) the total amount Plaintiffs would pay under the lease pursuant to the California Motor Vehicle Lease Agreement (minus the manufacturer's

rebate) as the base figures and then adding to those base figures a "double civil penalty" pursuant to the Song-Beverly Act. *See id.* ¶¶ 27-29.

Plaintiffs' motion here is based on the assertion that their Complaint alleged only that they had "suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00," Complaint ¶ 11, and that this referred to their "total damages (including actual damages, civil penalties, attorney's fees, punitive damages, etc.)." Docket No. 22-1, at 6:13-15. In addition, they argue that FCA has not provided any evidence of either actual damages or civil penalties in an amount higher than $25,001.00. They also assert that the $31,721.76 complete-lease-term figure referenced in the Complaint and relied upon, at least in part, by FCA in its Notice of Removal, is simply "an *approximation* of the complete lease term, and thus is *speculatory* [*sic*], and its approximation is not supported by any *evidence*." Docket No. 22-1, at 7:20-22.

FCA has presented reasons, in its Opposition, to call into question Plaintiffs' assertion that $25,001.00 was meant to include all types of recoveries Plaintiffs could receive here.[1] But the Court need not even attempt to settle that dispute. Even if the Court were to accept at face value Plaintiffs' assertion that the $25,001.00 figure referenced in their Complaint was meant to encompass all types of damages (including penalties, punitive damages and attorney's fees), the allegation is that the damages were "not less than" $25,001.00, *see* Complaint ¶ 11, in other words *at least* that much. Plaintiffs therefore cannot treat that figure as a *cap* on what they might recover here or on what they seek to recover.

As to the evidence/approximation issue, even ignoring the fact that Plaintiffs themselves alleged that the price for the "complete lease term" was $31,721.76, FCA also provided *evidence* of the contract price along with their Notice of Removal. *See* Declaration of Hailey M. Rogerson in Support of FCA US LLC's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, Docket No. 1-2, ¶ 11; Docket No. 1-5. The contract in question revealed that "[t]he total of your Monthly Payments" was

---

[1] Among other things, because Plaintiffs seek to recover the "entire contract price," and because both their allegations and the evidence provided with FCA's Notice of Removal indicate that the "entire contract price" figure is *at least* $31,721.76, Plaintiffs' contention that $25,001.00 is a cap on what they seek is impossible to square with the other information before the Court. In addition, FCA persuasively argues that "damages" cannot be understood to refer to civil penalties. Nor does the Court believe it is reasonable to interpret the term to include attorney's fees.

4

$31,721.76, and that the "TOTAL OF PAYMENTS" was 43,955.89.  Docket No. 1-5, at pg. 2 of 8.

Aside from arguing that their damages are in fact capped at $25,001.00 and that FCA's removal was evidence-poor, Plaintiffs also argue that FCA's calculations are improper because they believe FCA "must also provide essential facts about the purchase (or lease) price and use of the Subject Vehicle," Docket No. 22-1, at 8:16-18, seemingly suggesting that FCA must evidence Plaintiffs' payment history and the vehicle's mileage offset, made relevant by California Civil Code § 1783.2(d).  But, again, this is both inconsistent with both Plaintiffs' own allegations – *i.e.*, what they have themselves put "in-controversy" – and the law.  They seek the "entire contract price," not "the entire contract price – less payments made and an amount reflecting the valuation of their use or a mileage offset."  In addition, California Civil Code § 1793.2(d)(2)(B) provides that restitution is measured by the "the actual price paid or *payable* by the buyer."  Cal. Civ. Code § 1793.2(d)(2)(B) (emphasis added).  In other words, it extends to the entire amount that a plaintiff is obligated to pay.[2]  Moreover, this Court agrees with at least some other district courts that mileage-offsets and vehicle-value reductions are not appropriate for consideration for amount-in-controversy purposes.  *See, e.g.*, *Wickstrum v. FCA USA LLC*, No. 3:20-cv-00336-L-JLB, 2021 WL 532257, *2 (S.D. Cal. Feb. 12, 2021); *Pristave v. Ford Motor Co.*, No. CV 20-04892-AB (Ex), 2020 WL 4883878, *3 (C.D. Cal. Aug. 20, 2020).[3]

Also, removing defendants are not obligated to prove a plaintiff's case in establishing the amount-in-controversy.  This Court therefore disagrees with those district court-level decisions that have indicated that a defendant must provide evidence that it is

---

[2] Plaintiffs have not suggested that subsection 1793.2(d)(2)(B), cited and discussed in FCA's Opposition brief, *see* Docket No. 24, at 7:17-20, is inapplicable here.  Even if it is, again, Plaintiffs seek the "entire contract price" by way of this litigation.

[3] Plaintiffs' mileage-offset argument in their Reply brief demonstrates one reason why courts are not to consider a defendant's defenses, or what a defendant will actually owe, in attempting to measure the amount-in-controversy, as recognized in cases such as *Schunk*.  Plaintiffs assert that the mileage-offset determination is dependent upon a factual finding made by the ultimate trier of fact.  *See* Docket No. 25, at 6:22-23 & 7 n.3.  Yet, amount-in-controversy determinations must, by their very nature, be made at the outset of litigation in federal court.  They cannot await trier-of-fact-dependent determinations, *see Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010), and they are not "fatally speculative," *id.* at 7 n.3, in the absence of such still-to-come determinations.

more likely than not that a plaintiff *will* recover a full civil penalty, or evidence of willfulness.[4] The mere fact that Plaintiffs *seek* such a civil penalty puts in-controversy an amount equal to twice the amount of actual damages. That Plaintiffs now assert there is a basis in law (or logic) which may restrict their recovery of actual damages to some lesser figure than the "entire contract price" does not change the fact that their Complaint *put in controversy* at least up to $31,721.76 as actual damages. *See, e.g.*, *Cain*, 890 F.Supp.2d at 1249.

Attorney's fees – including future attorney's fees – must also be included in an amount-in-controversy calculation, where a statute or contract entitles a plaintiff to such, *see Fritsch*, 899 F.3d at 788, 794. A defendant still must prove those future attorneys' fees by a preponderance of the evidence (and "with summary-judgment-type evidence"). *See id.* at 788, 795. However, even if the Court were to ultimately conclude that FCA's showing regarding $50,000 in attorney's fees was insufficient here,[5] its showing of the "entire contract price," a damages amount of at least $25,001.00, a civil penalty of twice actual damages (even if the amount of actual damages is, at this point, unclear, and is merely a subset of the $25,001.00 figure) is, along with a fraction of the $50,000 fee figure and a small punitive damages award, likely to exceed $75,000.[6]

The Court is comfortable in concluding that FCA has met its preponderance-of-the-evidence burden with respect to the necessary amount-in-controversy. The Court therefore denies Plaintiffs' motion.

---

[4] Nor must FCA provide evidence supporting a punitive damages award. Plaintiffs' mere request for such an award puts punitive damages in-controversy, whether or not *Plaintiffs* can ultimately support that request with any evidence.

[5] FCA asserts that attorney's fees "regularly exceed" $50,000.00 in connection with the Song-Beverly Act. *See* Notice of Removal ¶ 25; Declaration of Spencer P. Hugret in Support of FCA US LLC's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, Docket No. 1-1, ¶ 5; *see also* Declaration of Hailey M. Rogerson in Support of Defendant FCA US LLC's Opposition to Plaintiffs' Motion to Remand, Docket No. 24-1, ¶ 5.

[6] The Ninth Circuit has placed its confidence in district courts that they "are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees." *Fritsch*, 899 F.3d at 795. "In estimating future attorneys' fees, district courts may likewise rely on 'their own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)); *see also Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 (N.D. Cal. 2002) ("The amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience.").